# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARGO ANN WILLIAMS,

    Defendant.

No. CR23-64-LTS-MAR

**ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

## I. INTRODUCTION

This matter is before me on a motion (Doc. 103) for a judgment of acquittal or, in the alternative, a new trial by defendant Margo Williams. The Government has filed a resistance (Doc. 108). Oral argument is not necessary. *See* Local Rule 7(c).

## II. BACKGROUND

On January 10, 2024, Williams was charged in an eight-count Superseding Indictment (Doc. 21) with one count of bank fraud in violation of 18 U.S.C. § 1344(2) (Count 1), three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 2-4), three counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (Counts 5-7) and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 8). A jury trial began on September 9, 2024. The Government presented testimony from thirteen witnesses and entered eighty-five exhibits into evidence. *See* Doc. 74-1. Williams called two witnesses, including herself, and entered twelve exhibits into evidence.[1] *Id.*

---

[1] I will not undertake a lengthy discussion of the trial evidence, which is generally summarized by each party in their respective briefs, but I will discuss the evidence relevant to the issues raised by Williams in the analysis.

Williams moved for a judgment of acquittal at the close of the Government's case and renewed the motion at the close of all of the evidence. I reserved decision on the motion pursuant to Federal Rule of Criminal Procedure 29(b). On September 9, 2024, the jury returned a verdict (Doc. 75) finding Williams guilty of all counts. The jury also found that the purposes of the money laundering conspiracy under Count 8 included money laundering and engaging in monetary transactions in property derived from specified unlawful activity. Doc. 75 at 3. Williams now renews her motion for judgment of acquittal or, in the alternative, requests a new trial. Doc. 103.

### III. DISCUSSION

#### A. *Motion for Judgment of Acquittal*

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court views the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005) (internal quotations omitted). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). Moreover, courts "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). Additionally, courts should not reconsider the credibility of the witnesses, as that is a task for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

2

Williams focuses her argument on the mens rea elements of each of the charged offenses. Specifically, Williams argues:

> [T]he government failed to prove that Ms. Williams acted with intent to defraud, as required for a bank fraud conviction in Count 1; that she had knowledge of illegality with respect to the money transfers at issue in Counts 2 through 7; or that she voluntarily and intentionally joined in an agreement or understanding to launder money, as required for a conspiracy conviction in Count 8.

Doc. 103-1 at 19. In support of this argument, Williams reiterates her contention that she was the victim of a highly sophisticated romance scam and highlights the convincing nature of the scam, the scammers' "diabolical persistence" and her own conduct that "did not evince a consciousness of wrongdoing." *Id.* at 19-20. Williams further argues that the conviction fails even under a "willful blindness" theory because she did not take deliberate actions to avoid learning the criminal nature of the scheme, but rather took deliberate actions to try and find out if she was involved in criminal activity. *Id.* at 21-22.

The Government counters that Williams "was a witting participant in the fraud and money laundering schemes." Doc. 108 at 4. The Government argues that the evidence presented at trial was more than sufficient for a jury to find Williams guilty. This included evidence that Williams is a professional accountant who opened several bank accounts that were used to move over $800,000 of funds that were the product of fraud and money laundering schemes. *Id.* at 4-5. The Government further argues that Williams betrayed her knowledge of the fraud by rapidly transferring and spending the large sums of money that were placed into her accounts, including making expensive personal purchases. *Id.* at 6. Far from being an unwitting participant, the Government highlights several examples that should have put Williams on notice of illegal activity. For example, one particularly large wire transfer identified the transfer in the memo line as "ST LUDMILAS Garling Construction." *Id.* Further, Wells Fargo ultimately closed one of Williams' bank accounts after providing at least three notices of unauthorized

3

money transfers. *Id.* This was not the only notice Williams had that the money she was receiving was fraudulent, as around $237,000 was later frozen in one of Williams' accounts, after which Williams continued to transact with "Tom Hardy." *Id.* at 7. Finally, the Government points to multiple instances of conduct that tend to prove Williams' knowledge of guilt, including false statements to BetterLegal in forming a shell corporation, false statements to LedgerX regarding the source of her funds, deleting messages with "Tom Hardy" in the middle of her interview with FBI agents and minimizing the reasons multiple banks had closed her accounts. *Id.* at 7-8.

"Proof of knowledge, like proof of intent, is rarely established by direct evidence, but may be proved by all pertinent circumstances." *United States v. Jewell,* 893 F.2d 193, 194 (8th Cir. 1990). In this case, the Government presented sufficient evidence for a jury to find that "all pertinent circumstances" pointed to Williams possessing the requisite knowledge and intent to sustain a guilty verdict on each count. *Id.* Viewing this evidence in the light most favorable to the Government, I find that reasonable jury could find that Williams is guilty beyond a reasonable doubt of the charged offenses. As such, her motion for judgment of acquittal must be denied.

### B. Motion for a New Trial

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (internal citations omitted). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). However, the court should grant a new trial only if "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Rodriguez*,

4

812 F.2d 414, 417 (8th Cir. 1987). "The standard for granting a motion for new trial is more lenient than for a judgment of acquittal; the court is allowed to vacate any judgment if the interests of justice so require." *United States v. Dean*, 810 F.3d 521, 532 (8th Cir. 2015) (internal citations). However, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

In addition to incorporating her arguments from her motion for acquittal, Williams requests that I use my greater discretion to find that she was a credible witness who was truthful in her testimony about what transpired. Doc. 103-1 at 22-23. Further, Williams requests that I reconsider rulings I made prior to and during trial. Specifically, Williams requests that I reconsider my decision to include a willful blindness instruction, my decision to allow the Government to elicit testimony about Williams' marital status and my decision not to exclude Exhibit 48K, in which Agent Spicer asked, "[i]t makes me think, like, is this willful blindness going on?" *Id.* at 22-24. I will address each issue in turn.

Beginning with Williams' argument that I use my discretion to find that she was a credible witness, I decline to do so. The credibility of witnesses is typically a matter for the jury to decide. *United States v. Santana*, 150 F.3d 860, 864 (8th Cir. 1998). Absent exceptional circumstances, I am cautious about usurping the jury's role in weighing the credibility of witnesses and such exceptional circumstances are not present here. As the Government correctly points out, there were certain inconsistencies in Williams' testimony that could rightfully lead to a jury finding her less credible. *See* Doc. 108 at 10-11. Further, the credibility of Williams' "romance scam" theory of defense is the exact type of credibility determination that a jury is well-positioned to determine. I will not disturb the jury's credibility findings.

5

Williams next argues that it was inappropriate to give the jury a willful blindness instruction. Williams rests her argument on *United States v. Barnhart,* 979 F.2d 647 (8th Cir. 1992), which states in relevant part:

> The government insists there was also evidence that Barnhart purposely avoided learning of Lunday's actions. To support this proposition, the government emphasizes Barnhart's receipt of documents reflecting [the business's] troubled financial status as well as his actions that, purportedly, were causing the company's difficulties. Viewing these factual matters in the light most favorable to the government, we hold it was improper for the district court to instruct the jury on willful blindness.
>
> In order for a defendant's ignorance to be deliberate or willful, the defendant must have been presented with facts that put him on notice that criminal activity is probably afoot, and then the defendant must have failed to investigate those facts, thereby deliberately declining to verify or discover the criminal activity. There is no question that Barnhart failed to investigate, and thus remained ignorant of Lunday's criminal acts. However, the facts made available to Barnhart did not suggest that criminal activity was probably afoot. The mere fact that [the business] was experiencing a cash flow problem and still remained in business is not sufficient to suggest that the company's continued operations were probably due to illegal conduct. Many businesses remain in operation despite financial difficulties without violating the law. It also does not matter that Barnhart received copies of financial statements describing [the business's] difficulties because the record reflects that nobody could discover the mismatching of loan proceeds simply by examining the documents Barnhart received. Moreover, the fact that Barnhart may have, in some way, caused the company's financial difficulties did not present him with facts from which he could infer a probability that the company was engaged in criminal activity. Even though Barnhart was ignorant of the facts, he was not deliberately ignorant because he was not presented with facts that indicated criminal activity was probably occurring; therefore, the willful blindness instruction should not have been given.

*Id.* at 652. Unlike in *Barnhart,* the facts available to Williams suggested that "criminal activity was probably afoot." *Id.* As noted above, several instances should have alerted Williams to criminal activity, such as multiple bank accounts being closed and large amounts of money being frozen in bank accounts. Doc. 108 at 6-7. While Williams did

6

*some* research about cryptocurrency scams and Tom Hardy, and asked "Tom Hardy" about the source of the funds, *see* Doc. 103-1 at 22, this cursory research was insufficient in the face of overwhelming evidence of criminality and cannot overcome the inference that she was willfully blind to criminal behavior. Further, I disagree that the willful blindness instruction was necessarily fatal to Williams' defense. While I will not speculate as to which theory the jury found persuasive, the evidence was sufficient for the jury to find that Williams possessed the requisite knowledge and intent on each count to sustain a guilty verdict even absent willful blindness. *See Jewell,* 893 F.2d at 194 (8th Cir. 1990) ("Proof of knowledge, like proof of intent, is rarely established by direct evidence, but may be proved by all pertinent circumstances.").

Next, Williams argues that it was inappropriate to allow the Government to elicit testimony regarding her marital status. As I explained in my pretrial order, I would permit questioning regarding Williams' marriage only if she opened the door to it. Doc. 51 at 7-8. During direct examination, Williams referred to "Tom Hardy" as "my boyfriend, the person I was in a relationship with." Doc. 93 at 30. I found that this opened the door for the Government to clarify her marital status and nothing further. Doc. 93 at 36. I stand by my reasoning that Williams referring to "the person [she] was in a relationship with" opened the door to whether she had another relationship at the same time. *Id.* Further, this question was relevant under Federal Rules of Evidence 401 and 402, as it related to whether or not she could in good faith believe "Tom Hardy's" statements. *Id.* Any concerns of prejudice under Federal Rule of Evidence 403 were ameliorated by allowing the Government to ask only if she was married, without further questioning about her infidelity. *Id.*

Finally, Williams argues that Agent Spicer's comment in Exhibit 48k that "[i]t makes me think, like is this willful blindness going on?" amounted to hearsay and should have thus been excluded. I agree with the Government that this was merely a question, not a statement uttered for the truth of the matter asserted under Federal Rule of Evidence 801(a). As such, it was not error to include Exhibit 48K.

7

No miscarriage of justice occurred that would justify the grant of a new trial. Williams' motion for a new trial will therefore be denied.

## IV. CONCLUSION

For the reasons set forth herein, defendant Margo Williams' motion (Doc. 103) for a judgment of acquittal or, in the alternative, a new trial is **denied**.

**IT IS SO ORDERED** this 17th day of December, 2024.

_____
Leonard T. Strand
United States District Judge

8

Case 1:23-cr-00064-LTS-MAR    Document 111    Filed 12/17/24    Page 8 of 8